The last case on Ms. Morgan's docket is the case of people in the state of Illinois v. E. Recklein, and we have Mr. Stegman, the minor, and we have Mr. Hickman. You may proceed. It's always with great appreciation over my career that I get an opportunity to address the appellant court, and that brings me to the particular point we have in this case. In my career, and I started out as an assistant state's attorney under his honor, Judge Carnes, which was on the appellant bench, and from there with Bob Rice in St. Clair County, state's attorney for a number of years there, and became chief assistant. And during that particular period, as a state's attorney, we became familiar with all types of cases that would come out of St. Clair County, and it was under both the state's attorney, Judge Carnes and Bob Rice, that I learned that a particular word can make a big difference in a prosecution of a case. And we cannot assume, or we cannot, if you will, speculate as to facts in a case, we must have those facts, and those facts must prove beyond a reasonable doubt the elements of the offense that we're involved in. And a particular word, and in this particular case, obviously, the word I'm talking about is penetration. Now, also I learned in my number of years that when you have a high-profile case in a county, and you need some resolution of that case, sometimes the police rush to judgment to solve that case and sort of ease the minds of the community as to the perpetrator. And in this particular case, in Madison County, it was a highline case, a lot of newspapers, articles, et cetera. And the case eventually, according to the police, was solved. Now, I concede, as in the state's argument, that it can be proved by circumstantial evidence. And we as prosecutors, when we looked at a particular case and we didn't have any direct evidence, the next thing we looked at is, do we have enough circumstantial evidence so that the trier of facts can be assured that we've proved our case beyond a reasonable doubt? Now, in this particular case, and from the facts in this particular case, the victim, of course, was rendered unconscious by a brutal beating and apparently was in the hospital for a period of two or three weeks. Upon her availability to be questioned by the police department, the police suggested to her that, oh, by the way, do you know that you were sexually assaulted? Suggested to the victim that she had been sexually assaulted. It's without question, as we stand here today, that this girl cannot testify, and did not testify in the trial, that she knew at that particular time or the day whether or fact she'd ever been sexually assaulted. So, no direct evidence. So, with that in mind, then the next thing we go to is, let's look at the circumstantial evidence of this case from the state's viewpoint to determine whether or not we have enough circumstantial evidence to prove the element of penetration. Now, on page 15 of the government's state's brief, they talk about what they consider to be enough circumstantial evidence so that the trier of fact can prove penetration. Now, again, I will concede to this court that one of my cases talk about slight contact, meaning the penis might have slight contact with the female portion of the anus, and that is enough to convict. Now, let's look at this case to see what circumstantial evidence we have. Number one is, they talk about, well, when they discovered the victim, she had used a tampon, and that that tampon was a side next to her and on the ground, and therefore, that would be evidence of penetration. It would stretch the imagination to believe that that alone, the fact that she didn't have the tampon and that it had been removed, is any indication of penetration or any indication of sexual intercourse, none whatsoever. Now, they go down and they say, okay, the next thing we do is we're going to talk about the fact that there was the YSTR chromosome found on the panty of the victim. Now, I will remind this court, and I tried this case, that the State of Illinois Crime Division, who had this particular specimen, could not find a match. And their results came back inconclusive, so that the government, the state then went to Ms. Kidd, who looked at the Y chromosomes of a male, and she determined, based upon her scientific research, that in fact, this was a YSTR chromosome, and that there were two possibilities, but the most possible one was the defendant, Keith Reichert. Now, so what she found out was a, it's not semen, it's an element of the semen, a fluid, a male fluid, but that male fluid was found on her panty again. That does not prove penetration. We cannot assume that that's what it led to. Then we talk about, okay, the fact that the defendant testified that the victim had a tattoo on her back. Again, that's not evidence of penetration. None whatsoever. So what was the evidence? Of anything? Of penetration? None. Any evidence? None. Zero. Zero. What about the dirt leaves found on her penis? Excellent point. How does that fact lead to any indication that there was penetration? Or can we, we can't assume it. We can't speculate. All we can say is that's a fact. How did it happen? Was she drunk from point A to point B, and then dragging, maybe without her clothes? That could have caused it. That's a realistic assumption. But it certainly can't, it can't in any way take that point and say, okay, that shows that there was penetration. How? I don't see how it could possibly do it. You can't, again, assume those types of facts. You have to have something more than that. Now let's take something else. Normal rape prosecutions, you have the doctors, hospital personnel, who are trained, who are trained to use rape kits to determine whether or not a victim has been penetrated and whether or not there's sexual assault. Okay? Now, this young lady was tested, was examined twice. Both times, neither doctor could say that there had been any sexual assault. Her results were normal. Normal. Now, the state can come back and say, well, of course it was normal, because she was unconscious at the time. And therefore, why wouldn't the test be normal? Well, you know, that's another assumption. That's another, well, maybe, possibly could be. Or, again, does it go back to whether or not the police, in their eagerness to prosecute this person, assumed that she had been sexually assaulted, assumed that the test results would be different than they were. And they just simply weren't. Is it enough to prove by circumstantial evidence that sexual assault occurred and penetration resulted? Circumstantial evidence. Absolutely. Circumstantial evidence can certainly be used in that, but it has to. And that's, as Kurt points out, that's the danger area. How do you jump from the facts of a case where a victim knows that she was sexually assaulted, and the defendant says, no, I didn't do it, but there are evidence that in fact the semen and things like that can circumstantially cause a conviction, because the victim says, I was sexually assaulted by that guy. This woman couldn't say that. The guy had no idea. None whatsoever. When you look at this case again factually, and I know it's a serious case from the standpoint of how she was brutalized, I understand that. And your client doesn't deny that he was at the park? Absolutely does not deny that. And he doesn't deny that he made these statements, I don't know what the heck I did, what the heck, how did that happen? No dispute about that? Absolutely no dispute. And there's no dispute that he was there alone with her? I would say, based upon the facts, no dispute about that either. No dispute about that either. But he never, as candid as he was with the police officers, ever admitted that he had had sex with her. Never one time. Now you take a guy off the street like Mr. Recklein who's never had problems before, he's been interrogated two or three or four times voluntarily, says to the police officers in great humble ways, I'm sorry what happened to her, I was there, you know, but never, if he's so humble and so, you know, believable from that point, why doesn't he admit he had sex with her? Because he didn't. Because he doesn't remember what happened. Yeah, and I say he doesn't remember what happened, it's certainly a part of the police trying to find out, well did you in fact have sex with her? Well he didn't say yes or no. Didn't say yes or no. But then again, we can't assume, can we, that he did or he didn't, we don't know. Again, it's out there in the area of assumption and possibilities. And the, putting all these facts together, again, obviously no direct evidence, we don't even have to talk about direct evidence of penetration. How do any of these put together demonstrate in any way, shape, or form that he had contact, no matter how slight, with the vagina or the anus of this girl, there just isn't any evidence. And you have to prove beyond a reasonable doubt. And it just isn't there. And there's no facts that can make it there. So I suggest to this, we're dead. And again, when we talk with young lawyers that are coming up about the prosecutions and elements, things like that, we always say to them, you know, you must have the evidence. You must be able to prove the elements beyond a reasonable doubt. And if you can't, you don't have a case. You can't make facts. You can't make facts. Circumstantially, wagon train, arrows in the wagon train, Indians firing. Okay, that's circumstantial evidence that is broadest. But you have to go further when you're trying to prove a case beyond a reasonable doubt. That is the element of this case. That's why I'm asking this court to indicate that, in fact, unfortunately the state failed to prove that element. And so the two charges, two sexual charges, must be dismissed. Any questions? Thank you. Thank you. Thank you. Mr. Chapman, may it please the court. My name is Timothy James Ting, and I do represent the people of the state of Illinois. Your Honors, in my time before you, I will show you why the defendant's conviction for aggravated sexual assault, two counts, was proven beyond a reasonable doubt. Now, at the forefront, I want to address the waiver of the defendant's claims. The defendant here was convicted also of aggravated battery. He does not dispute that in his initial brief, and he has not raised that. Therefore, that issue has been waived, and there is a case law, which I've cited in my brief, which states as much. Moreover, the defendant has also waived contesting various issues or elements within the aggravated sexual assault charges. In fact, the only element which the defendant relies on to say that was not proven beyond a reasonable doubt was the act of penetration. That being stated, Your Honors, let's get to the meat and potatoes of it. The defendant begins by stating that in his years of practice as a prosecutor, you can't assume, you can't speculate, that that's the foundation principle for good prosecution, understanding that. Well, I haven't been practicing nearly as long as Mr. Stegmaier, but I do know the law, and the law says that inferences are allowed. In fact, law that is far older than both me and Mr. Stegmaier combined states that circumstantial evidence, which creates reasonable inferences, can be used in a prosecution. So you're saying penetration can be proven by circumstantial evidence? Absolutely, Your Honor, and I would appoint this court specifically to a citation from several cases which say as much. In fact, from People v. Herring, you can find this on 324 Ill App 3D 458. It states, a trier of fact is entitled to draw all reasonable inferences from circumstantial evidence, and I quote, including an inference of penetration, end quote. I appoint this court again to People v. Herring, People v. Williams, and the Right Interest of Williams, which says, again, penetration can be shown by circumstantial evidence. And in those cases, can you cite any other case that has facts similar to this in that the victim did not know whether or not she had been sexually… Your Honor, that's an excellent question, and to be frank with you, there is no case factually on point with this in that there is… It's pretty unusual. So it's a pretty unusual case, and for that I would also urge this court to publish this opinion because it does explain that well-settled rule of law, circumstantial evidence, inference for penetration with a novel factual issue. But that being stated, I did find a case, and this is an unpublished opinion, just in fair disclosure, but I did find a case in State v. Eck. This is a Minnesota appellate case, and what happened here is that the defendant was convicted of aggravated sexual assault. The victim woke up. She did not recall any event of penetration or sexual assault, but she noticed that some of her clothes were unbuttoned and that they weren't placed on right. And then she found that her tampon was inserted incorrectly, and from this, that circumstantial evidence was enough to sustain a conviction. I submit to you, Your Honor, that it's State v. Eck. You can find that in my brief. I'll also give you the citation here for argument. And was that case supported by medical testimony that doctors believed that she had been sexually assaulted? Your Honor, I don't know in this particular instance whether there was any medical testimony that said whether she did sustain abrasions or not. I would assume it was not, though, because it's not cited in my brief. I will state to this court that they can find the full record on 2005 West Law 1514246. Particularly on page 6 is when there's a real analysis on the inferences and circumstantial evidence of penetration. That being stated, because there is no case law that is directly on point, we have to use those generalized rules of law pertaining to circumstantial evidence and then apply them to the facts of this case. And what we have here is overwhelming indications from various multiple sources of circumstantial evidence when, in perhaps individuality, they do not sustain a conviction. But together, when they are looked at a whole, in the totality of these circumstances, especially in light of the most favorable to the prosecution, such evidence secures a conviction for aggravated sexual assault in both the anus and vagina. Beginning with the vagina, the defendant states that the tampon left outside of the victim's body, Bambi Harawood, does not indicate anything. Your Honors, I would certainly disagree with that. We have to understand the factual context of this case. Ms. Harawood was found on May 1, 2008, completely covered in blood. The groundskeeper of that park discovered her in the early morning, and I quote, he thought she looked like a piece of discarded garbage. And you can look specifically on page 52 of the record and People's Exhibits 3 and 4. In actuality, Your Honors, I've seen multiple violent cases, and this is the most grotesque violent case I have ever seen that did not involve a murder. It is tremendous, the amount of suffering that she sustained, completely unconscious. She was fully clothed, and her tampon was laying outside of her body several feet away. Now, that in and of itself does create a very strong inference that, in fact, she was penetrated. Why in the world would a woman who was fully clothed and beaten savagely put on her clothes, take out her tampon, and then sleep in the middle of the woods? It does not add up. That in and of itself is already extremely strong circumstantial evidence that penetration, vaginal penetration occurred. And we know this was Bambi's tampon because the DNA evidence stated that it was as such that – and I believe it was 1 in 16 billion results that it was her DNA on the side of the actual tampon. So there's no question it was her tampon. There's no question that it was laying outside of her body. Now… What was the expert's testimony to support the claim of penetration? The expert, the medical expert? The medical expert stated that there was no abrasions. There was no bruising. There was nothing. And I want to quote for this court the particular aspect of the record. The prosecutor stated, and I quote, okay, so in your experience and in your opinion as a doctor, does a normal genital exam that a woman was not or could not have been raped or sexually assaulted, does that mean that she could not have been sexually assaulted? The doctor's response. No, it does not. Typically there is not injury to the genital area. Typically. But that just proves that she could have. It's not proof that she was. Absolutely. It's proof that she could have. That in and of itself may not be enough. But when we look at that medical examination, plus the fact that the tampon was outside of her body… I mean the medical examination is basically just throwing out the window because it doesn't prove anything. It doesn't prove either or. So let's say we take the medical examination out. Let's say that the defense can't use it nearly as much as the state can. Neither one can use it. I would agree with you, Your Honor. If we take the medical examination out, what we still have is a tampon laying outside of this victim's body. We have leaves and dirt in her anus, which the nurse stated was… We did find, and I quote, we did find leaves and dirt in her rectal area, which she noted was unusual, as did the doctor on pages 44, 45, 34, and 35 of the record. She was wearing pants when she was discovered, and she was wearing panties when she was discovered. Again, the fact that she has leaves and dirt in her rectum creates an inference that something happened to her rectal area. Now, that in and of itself may not create enough of the inference to go beyond reasonable doubt. But then when we look at the other evidence, we look at the DNA evidence, which was found in her panties. Now, the defendant claims in his reply brief, and he stated a little bit in an oral argument that there wasn't DNA evidence, that it wasn't semen, it wasn't seminal fluid. Your Honors, I would point this court directly to the testimony of Jay Winters and Mrs. Kidd. You can find this beginning on page 86, and it goes through – it's a lengthy testimony, but essentially you can find the more relevant parts from 86 to 126. He goes through a long list of what DNA analysis is. Autosomal DNA analysis is the more normal or general type of DNA analysis that they conduct in cases. But particularly in sexual assault cases, sometimes autosomal DNA analysis does not work. And that's because the DNA of the woman and the DNA of the man will mix together, and it's very difficult to distinguish what is what. It's very hard to distinguish between the two DNAs if there's a mixture. So what they do is they do another type of DNA analysis, which is called YSTR DNA analysis. This looks at the Y chromosome of the man, obviously, and then isolates that and then creates a DNA analysis on that. Now, they find the YSTR chromosome for the DNA analysis from seminal fluid, and I'd point this court directly to the record. On page 94, Mr. Winters states, and I quote, YSTR analysis is different than autosomal STR because it examines the STR loci on the Y chromosomes, which only males have a YSTR. He then goes on to further explain. That's on 94 of the record. On 98 of the record, he says, and I quote, because sperm cells are harder to break open than other bodily fluids, we usually are able to separate the DNA that comes from sperm cells from the DNA that comes from other body cells. DNA from someone's semen being found on someone's panties does not equal penetration. Absolutely, if that was the only thing. But again, if we find DNA on her panties and we have a tampon that's laying outside of her body, surely this must be something where common sense and logic would dictate something happened to this woman. And penetration… Yeah, but I think you could infer that probably he took the tampon out, but I – how does that infer that he penetrated her? Your Honors, again, I would go to yet another point of evidence in the record. The defendant stated that he knew where her tattoo was located. Bambi stated that the tampon – I'm sorry – the tattoo was not noticeable even in tank tops or similar clothing, and she had never shown the defendant the tattoo. That's on page 264 of the record. Yet on his interview, his initial interview with the police on September 9, 2008, which you can find in People's Exhibit 17 approximately 32 minutes in, he states that he knew that Bambi had a tattoo on her back and even demonstrated its location physically for the officer. What does that prove about penetration? Again… She had somebody's tattoo. What if he took all of her clothes off and ejaculated on her, and then he hit her and beat her up and she passed out and she was – I mean it's horrible. I'm not trying to minimize it. Absolutely. Seeing somebody have a tattoo doesn't prove penetration. Again, perhaps not in and of itself, but when we look at all of these circumstances, it's not just the fact that he knew the tattoo. It's not just the fact that there was a tampon laying outside of her body. It's not just the fact that there was leaves and dirt in her rectal area. It's not just the fact that there was DNA on her panties. It's even the defendant's statements, which he states, and I quote at length all of these statements he says. I'm going to quote a few for you that I think are most relevant. He states on People's Exhibit 18, approximately 18 minutes in, there's a lot I'm trying to remember going through my head, going through everything, what I did, why I did what I did. Now, he says he doesn't remember what happened. But then we look further into the interview, and he says I'm going to lose everything, and I won't use the curse words, the expletives, but I'm going to lose everything. Again, we look at what he's saying. He says I remember telling Bambi Craig's not coming here. Craig's drunk. Next thing I know, I'm pulling into my driveway at 2 in the morning saying what did I do? What did I do? How can he infer that that means he sexually assaulted her rather than attempted to kill her apparently? Because if he only attempted to kill her… Only? And I don't mean to minimize it, but, I mean, if he solely – perhaps this is a better connotation. If he solely attempted to kill her, why? Why would there be a tampon outside of her body? Why would there be leaves? I think that's kind of the circuitous argument. Your Honor, if I may, if he was merely attempting to beat her, what the record shows does not infer that inference as much as it infers the more reasonable inferences that he was trying to rape her. But, Mr. Tink, the problem I'm having is we have no medical cooperation. So, I mean, if all of the – if the doctor, the medical personnel determined that she had been raped or sexually assaulted, I think then all these inferences would be more than ample to support that. But we don't have that. And she doesn't remember a thing, and he hasn't admitted a thing. You can have some sick, twisted guy that took off her underpants and ejaculated on the underpants and took out her tampon. And put leaves and dirt in her rectum. Well, I don't know about that. We can create a circumstance where the defendant could be innocent, where he took off our clothes, and he only ejaculated. He masturbated on her panties. Then he put the panties on, had the tampon out, put some leaves and dirt in her rectum for whatever reason. He could have done that. He could have done that. But that's not reasonable. That's not reasonable. We look at Bambi's testimony. As soon as she got down to the parts of the woods where he was going to rape her, he put her in a headlock, and she became unconscious. She suffered the majority of her beating after, when she was unconscious. Why would a person who, by the groundskeeper testimony said, looks like a piece of discarded garbage, not a human being, garbage, why would he beat her so mercilessly? It happens all the time. When she's unconscious. It could be the point, Your Honor, that the reason she is like that is because he wanted to create the appearance that she was merely beaten. And he tried to cover up his evidence. But he forgot about the fact that he let slip some of the statements, like he knew where her tattoo was, that he knew that her tampon was outside her body. There was a wallet that she had that had approximately $140 within it. So clearly robbery wasn't a motive of the defendant. Again, we could create a circumstance that may exonerate the defendant. But doing so suspends our disbelief. Let me ask you this. I have this in my notes, and I don't remember why I have it here, but I wrote down 68% of the population could be included as a possible source. Your Honor, that is with a minor fraction. There are two mixtures of DNA from the YSTR chromosomes. What happened was that when they did it, the major portion was Keith, and that was almost an old loci. Because the way that they conduct the SDR analysis, they have 13 loci, and then they match them up. And the more they have, obviously, the more of a match they can get. They had a faint match. They weren't able to do it. They weren't in any way able to put down to an individual. Most likely what happened is that Bambi had sex with another male. And because of that, his DNA was there. But it was so long ago that it was faint. It was just a faint detection. But what we do have is a clear, imminent source that is fresh that shows on all these loci the defendant's DNA, his YSTR. Why? Why in the world would his DNA be on her panties other than the fact that he raped her? Granted, he could have ejaculated onto her panties alone, but common sense and logic dictates. When this jury went to the trial, they weren't thinking of the legal concepts of penetration and is it penetration? Or the bench trial, the trial court wasn't thinking, okay, legal concepts of penetration, this is what I have to think of. It was thinking, okay, when I look at all this evidence, can it be shown beyond a reasonable doubt that penetration occurred? And common sense and logic dictate that is what occurred. The defendant stated he was entirely responsible. Again, his quote, I'm totally responsible, People's Exhibit 18, approximately 54 minutes into it. Again, why would he claim total responsibility? I would also point this court to the defendant's lack of acceptability or accountability. In the beginning, the defendant claimed he didn't even know Bambi. The first interview, September 9th, it wasn't until the very end that he said, oh, I've seen her around. She's got a tattoo on her back. But that's it. I definitely didn't meet her on May 1st, and I definitely didn't see her at Horseshoe Lake. But in the second interview in October, then he said, okay, well, you know what? I did actually meet her there. It wasn't until they confronted him with DNA evidence, and you can find this on People's Exhibit 18 at approximately 443, when the officer said, we know you're lying. We have your semen. And he said, okay, I did meet her, but I didn't rape her. And so that was his story. It's a constant revision to try to make the facts work for his innocence. But this constant revision shows in the totality of the circumstances that in actuality he was guilty. He was clearly trying to cover this up. He did everything he could, and he did a very good job of getting to that point where there's at least a question as to whether or not he was proven beyond a reasonable doubt. But, Your Honors, I submit to you, we have got to use – we cannot mechanically apply the law to such an extent that it swallows the entire rationale for why the law was created. The penetration aspect was to make sure that this happened. When we have a tampon outside of the victim's body, the victim was beaten atrociously after she was unconscious. There's leaves and dirt in her rectum. She had a tattoo, which she did not disclose to the defendant, and the defendant yet knew where that was. The defendant's seen her naked. The defendant's DNA is in her panties. What more do we need in circumstantial evidence? Now, granted, this is a novel issue. This has not been decided. But when we have a case where all the evidence points to this conclusion, this court's job is not to retry the defendant. This court's job is to look at the evidence in the light most favorable to the state and come to the conclusion whether that decision was arbitrary, unreasonable, fanciful, so that no rational juror could convict the defendant. Here, Your Honors, I submit to you. Rational jurors could convict, in this case, the bench. But a rational trier of fact could convict the defendant on the evidence we have. State v. Eck is just a precursor. It's just a showing when a tampon was inserted incorrectly vaginally. I'd urge you to read that case and then come to a just conclusion. I thank you, Your Honors, for your time. Do you have any questions for me? Do you have the opportunity, Mr. State Lawyer? What do you say about the Eck case, which I have not read yet? Is my understanding it's a side out of Minnesota? Yes. I don't want to think about the Minnesota courts and what that may have said. But I'd say it's pretty far flung unless, as Your Honors pointed out, there was some medical evidence of penetration. And then that piece of evidence, coupled with the expert testimony, is reasonable and could be circumstantial evidence of penetration. All the cases that have been cited by the state, and the court has noted this, this is a case where the victim does not know, doesn't have any idea, whether she had sex or not. Those other cases, there was sex involved. And so, therefore, the key then became link that intercourse up circumstantially with facts and make those facts be reasonable facts. Reasonable facts, meaning the state has the burden beyond a reasonable doubt. Now, the state has argued, well, it might be, it could be, it's possible. Now, that could have happened, or maybe it did happen, but there was a tampon on the ground. So, therefore, something must have happened. Granted, something must have happened. But that doesn't mean penetration. That could have meant, oh, we could make up volumes of what could have happened for that particular event. We could do the same thing with the leaves involved in the rectal area. We could come up with all kinds of scenarios that is possible. But they don't prove beyond a reasonable doubt penetration. They prove a lot of things could have happened. And so the key to the case, obviously, to me, would have been the doctor's examination. Not one examination, but two examinations. Both normal examinations. Now, if we have this savage attack, and I'm not saying it wasn't. The state didn't charge him with attempted murder. They charged him with aggravated battery. Now, if it's so savage, one would assume, like the state says, that there ought to have been some sort of tear or interruption of the skin or something with regard to either the anus or the vagina. If this was such a savage attack by such a savage person, why wasn't any of that there? Why was it a normal examination? Why wasn't the fact that it didn't raise any questions to anybody, even to the victim? Oh, I was raped? You know, again, Your Honor, we have jumped to conclusions. I believe this case might have been an attempted murder on its own and not add something on that didn't exist that you couldn't prove beyond a reasonable doubt. And that's the burden the state has. And the reason the burden has that burden is to preclude fanciful arguments that might or could happen and not living up to the burden they have. They have that burden. Do you agree the aggravated battery conviction has to stay? I do. Absolutely, Your Honor. I'm not here to delay this court with that type of an argument. I'm just talking about criminal law and the elements that you must prove that we as attorneys and the courts must adhere to and pass on to the people that are coming up. If you don't have the facts, you can't make the case. If the glove doesn't fit. But anyway, I know, I apologize. But anyway, that's my feeling about this. And it's a tragedy, and I accept that. And the girl's making a good recovery. I'm fine with that, too. But we have to follow the law. We just have to follow it. We've taught it in law school. We teach it as prosecutors. We pass it on to our younger people. Elements must be proved. Thank you, Your Honors. Thank you, Mr. Stegemeyer. Thank you, Mr. Ting. And I'll take the matter under advisement in the new ruling.